UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AROR ARK O'DIAH,

                        Plaintiff,

    -vs-                            **No. 6:10-CV-6592(MAT)**
                                       **DECISION AND ORDER**
C.O. NETH, et al.,

                        Defendants.

---

**I. Introduction**

Pro se plaintiff Aror Ark O'Diah ("Plaintiff" or "O'Diah"), an inmate in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), filed a 76-page, 156-paragraph complaint against numerous DOCCS defendants alleging violations of his constitutional rights under 42 U.S.C. § 1983. By order dated March 14, 2011 [#65],[1] the Court struck numerous paragraphs from the complaint [#64] because they related to occurrences that are the subjects of other § 1983 lawsuits filed by O'Diah. Defendants were directed to respond only to the allegations on pages 20 through 49 of the complaint that pertained to occurrences at Wyoming Correctional Facility ("Wyoming"), i.e., Paragraphs 15 through 80.

Defendants have filed a motion to dismiss [#69] the complaint pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6) on the basis that O'Diah has failed to state any claims for which

---

[1] Numerals in brackets refer to the numbered docket entries in this case in the Western District of New York's Case Management/Electronic Case Files ("CM/ECF") system.

relief may be granted. O'Diah opposed the motion to dismiss and filed a motion for summary judgment [#73]. The Court (Larimer, D.J.) denied the summary judgment motion [#76]. The matter was transferred to the undersigned on October 30, 2013 [#79]. For the reasons set forth below, Defendants' motion to dismiss is granted, and the complaint is dismissed in its entirety.

**II. Factual Background**

Plaintiff has not separated his allegations into discrete causes of action in the complaint. The allegations cover disparate topics and will be summarized as needed in the Discussion section, infra.

**III. General Legal Principles**

    **A. Motions to Dismiss for Failure to State a Claim**

Rule 12(b)(6) allows dismissal of complaints based upon the plaintiff's failure "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 556 U.S. at 679, and draw every reasonable inference in favor of the plaintiff, Zinermon v. Burch, 494 U.S. 113, 118 (1990). However, the plaintiff's

allegations must consist of more than mere labels or a "formulaic recitation of the elements of a cause of action," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), and bare legal conclusions are "not entitled to the assumption of truth." Id. at 679.

**B. Construction of Pro Se Pleadings**

The Supreme Court has noted that "[a] document filed pro se is to be liberally construed,' and must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v.Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007). Because Plaintiff is acting pro se, the Court will construe his submissions liberally, "to raise the strongest arguments they suggest." Bertin, 478 F.3d at 489.

**IV. Discussion**

   **A.   Paragraphs 15-30**

Paragraphs 15 through 30 of the complaint are asserted against Dr. DePerio, whom Plaintiff saw for "serious, severe and excruciating pains from headaches. . . ." Complaint ("Compl.") ¶ 17 [#64]. The allegations do not pertain to the medical care provided by Dr. DePerio but instead accuse Dr. DePerio of being a racist. For instance, Dr. DePerio informed Plaintiff that "then Presidential Candidate and Senator Barack H. Obama ("President Obama") can never impress him. . . ." Id., ¶ 16. According to Plaintiff, Dr. DePerio asked him if President Obama "was [his]

brother or did [they] come from the same Africa[n] country." Id., ¶ 24. Plaintiff states that Dr. DePerio's remarks amount to a "hate crime" and caused him to feel "humiliated, embarrassed" and "re-aggravated" his "pre-existing poor medical condition. . . ." Id., ¶ 27.

A plaintiff cannot maintain a claim under Section 1983 based on solely verbal abuse or racial slurs. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir.1986) (holding that name-calling without "any appreciable injury" did not violate inmate's constitutional rights); Cole v. Fischer, 379 F. App'x 40, 43 (2d Cir. 2010) (unpublished opn.); Jermosen v. Coughlin, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) ("[V]erbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."). O'Diah has not alleged that he was ever physically threatened or that he actually suffered any injury in connection with Dr. DePerio's remarks. Absent allegations of appreciable physical harm, the remarks by Dr. DePerio about which Plaintiff complains cannot from the basis of a section 1983 claim. The allegations in Paragraphs 15 through 30 are dismissed with prejudice.

**B. Paragraphs 31-33 & 36**

In Paragraphs 31 through 33 and 36, Plaintiff claims that Corrections Officer ("CO") Atkins repeatedly called him an "asshole". As noted above, verbal harassment, without more, is not actionable under Section 1983. See Keyes v. City of Albany, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) (holding that abusive language by

police officers-characterized by the court as vile and abusive racial epithets-could not form the basis of plaintiffs' Section 1983 claim). The allegations in Paragraphs 31 through 33 and 36 are dismissed with prejudice.

**C.  Paragraphs 34-35**

In these paragraphs, Plaintiff alleges that CO Atkins unlawfully subjected him to "cube confinement" without issuing a misbehavior report and holding a disciplinary hearing, and that his confinement also violated "Prison Directives, Procedures and Correction Law Sections [sic] 138(4)." Cube confinement refers to a form of punitive confinement for violating prison rules. See Lee v. Coughlin, 26 F. Supp.2d 615, 618 (S.D.N.Y. 1998) ("Three forms of punitive confinement exist in New York: placement in SHU, keeplock, which is confinement to the prisoner's cell, and cube, which is confinement to the prisoner's own bed in dormitory housing."). Inmates in cube confinement are entitled to the same privileges, and subject to the same restrictions, as inmates in keeplock.[2]

---

2

Under keeplock, an inmate is confined to his general population cell for 23 hours per day, with one hour reserved for exercise, the same time permitted general population inmates for exercise. During the 23-hour period, inmates are permitted to leave their cell for showers, personal and social visits, medical examinations and counseling in the same manner and for the same number of times as general population inmates in a maximum security facility. The most significant differences between keeplock and general population inmates are that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs, and general population inmates spend more time out of their cells on weekends. See Camacho v. Keane, No. 95 CIV. 0182(SS), 1996 WL 204483, at *2 (S.D.N.Y. Apr. 25, 1996).

The Court construes Plaintiff's allegations that he was not provided with a misbehavior report (notice) and a hearing (an opportunity to be heard) as attempting to state a procedural due process claim. In order to succeed on such a claim, Plaintiff must show that he had a liberty or property interest in remaining free from cube confinement and that he was deprived of that interest without procedural due process safeguards. Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citations omitted).

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court held that liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such a manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 474. Applying that standard to the type of confinement Plaintiff sustained, the Court finds that he has not alleged a sufficiently "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" so as to warrant due process safeguards. Plaintiff's confinement did not entail segregation from the general population, as was the case in Sandin. Plaintiff continued to be housed in his regular residential area, with some restrictions placed on his activities. Plaintiff has not plausibly alleged that his cube confinement "work[ed] a major disruption in [his] environment . .

. ." Sandin, 515 U.S. at 486. Therefore, it does not give rise to a liberty interest protected by the due process clause.

To the extent that Plaintiff alleges that CO Atkins violated a DOCCS directive, he does not have a cognizable claim. To state a valid claim under Section 1983, a "plaintiff must allege that 1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and 2) the conduct deprived the plaintiff of a *right guaranteed under the Constitution of the United States*." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999) (citing Dwares v. City of N.Y., 985 F.2d 94, 98 (2d Cir. 1993) (emphasis supplied)). "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." Cusamano v. Sobek, 604 F. Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases). Furthermore, the violation of a DOCCS Directive, standing alone, is not a violation of any New York state law, statute, or regulation. Rivera v. Wohlrab, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002)(citation omitted). This is because DOCCS directives are "merely a system the Commissioner has established to assist him in exercising his discretion," which the Commissioner retains, despite any violation of these directives. Farinaro v. Coughlin, 642 F. Supp. 276, 280 (S.D.N.Y. 1986); see also Cabassa v. Gummerson, 01-CV-1039, 2008 WL 4416411, at *6 n.24 (N.D.N.Y. Sept. 24, 2008).

In sum, the allegations in paragraphs 34 and 35 are dismissed with prejudice for failure to state a claim.

### D. Paragraphs 37-38

In paragraphs 37 and 38, Plaintiff again alleges that various DOCCS employees harbored "egregious hostility" toward him and, on unspecified occasions, relayed the contents of his mail to other unspecified DOCCS employees. These vague allegations do not state colorable claims for relief under § 1983.

Plaintiff also asserts that "Neth, Atkins, Vanson, and Lunith, as John Doe, [and] Mr. Weber, deliberately denied processing [his] grievances against Neth, Konkle Andrews, Sr., Vason and Atkins." Compl., ¶ 38. "[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." Shell v. Brzezniak, 365 F. Supp.2d 362, 370 (W.D.N.Y. 2005) (citations omitted); see also Cancel v. Goord, No. 00-CV-2042 (LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (citations omitted). Plaintiff's claim that Defendants failed to properly investigate his grievances is not cognizable under § 1983. E.g., Espinosa v. McCabe, No. 10-CV-497 (MAD/DRH), 2012 WL 4108884, at *16 (N.D.N.Y. Aug. 28, 2012) (citing Carrasquillo v. City of N.Y., 324 F. Supp.2d 428, 438 (S.D.N.Y. 2004) (stating that inmate involved in bus accident had "no constitutional or federal right to an investigation into that bus accident, or to have his requests for an investigation answered").

**E.     Paragraphs 39-41, 46-60, 69-71, 73-74, & 79**

Plaintiff asserts that on or about February 22, 2009, "it was brought to [his] attention that there has been ongoing plotts [sic], plans, put in place to harass [him]" and "to kill [him]." Compl., ¶ 39. According to Plaintiff, these plots and plans were the result of a vast conspiracy of corrections officers at Wyoming Correctional Facility. Id., ¶ 40. In order to make it "easier to prey on [him]," the corrections officers colluded to arrange for him to be moved to a different residence. Id., ¶ 41.

On March 12, 2010, Plaintiff states that he was unconstitutionally "arrested" and placed into involuntary protective custody ("IPC"). Id., ¶ 41. Plaintiff complains that he was found "guilty" of IPC. He questions the legality of his placement in IPC since he was "the victim of [a] death threat," and he does not understand how he "can be guilty of involuntary protective custody." Id., ¶ 79.

**1.     Conspiracy**

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). Defendants argue that they could not participate in a conspiracy in light of the intracorporate conspiracy doctrine, which provides that "if the

conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[ ] and employees, each acting within the scope of his employment[,]" there can be no actionable conspiracy. Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978). However, taking Plaintiff's allegations as true, there is no fair interpretation of them that suggests Defendants would have been acting within the scope of their employment had they entered into an agreement to kill him. See Randle v. Alexander, No. 10 CIV. 9235 JPO, ___ F. Supp.2d ___, 2013 WL 2358601, at *11 (S.D.N.Y. May 30, 2013) (declining to apply intracorporate conspiracy doctrine where no fair interpretation of inmate's allegations suggested that defendants were acting within the scope of their responsibilities as prison guards when they forced two inmates to fight each other in the mantrap area; conspiracy claim could proceed as a matter of law, so long as plaintiff stated a claim).

Nonetheless, summary dismissal of O'Diah's conspiracy claim is required. His allegations of conspiracy are unsupported and bizarre, and wholly inadequate to meet the Iqbal/Twombly plausibility standard. He asserts no facts to support an inference that any of the Defendants had a "meeting of the minds" about inflicting unconstitutional injuries upon him. Even assuming arguendo that his move to a different residence was an "overt act", he has failed to show that he suffered the injury he believed would result (i.e., his murder). The other injuries he alleges (i.e.,

loss of certain property during the move) are not of a constitutional dimension. Plaintiff's conspiracy allegations are factually frivolous, and dismissal therefore is warranted. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) ("[A] finding of factual frivolousness [warranting dismissal] is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible. . . .") (citing Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

### 2. Involuntary Protective Custody

The protective custody ("PC") unit at a DOCCS facility functions to protect inmates who cannot remain in the general prison population. Griffin v. Coughlin, 743 F. Supp. 1006, 1009 & n. 6 (N.D.N.Y. 1990). "Inmates housed in PC run the gamut from victims to the victimizers." Thus, some of the inmates in PC are placed in protective custody even though they do not request the placement. Id. These inmates reside in what is referred to as involuntary protective custody ("IPC"). Id.

Applying the Sandin analysis to this claim, the Court finds that Plaintiff's confinement in IPC was well within the "'normal range of custody "normal range of custody which the conviction has authorized the State to impose,' and therefore does not constitute a violation of the Due Process Clause." White v. Artuz, No. 94 Civ. 4592, 1996 WL 84498, at *2 (S.D.N.Y. Feb. 27, 1996) (quoting Sandin, 515 U.S. at 478; further quotation omitted)).

O'Diah was placed in protective custody not for punitive purposes, but for his own safety, pursuant to New York regulations governing the treatment of "inmates who are potential victims." See N.Y. COMP. CODE R. & REG., tit. 7, § 330.5. Courts in this Circuit have found that this type of confinement is clearly not outside the "regime . . . to be normally expected" by one entering prison. White, 1996 WL 84498, at *2. In addition, Plaintiff does not allege any personal injury, disciplinary sanctions, or denial of privileges resulting from his confinement in IPC. Therefore, he cannot claim that confinement in IPC imposed a "significant hardship" on him. O'Diah consequently cannot fulfill Sandin's requirement that the confinement be of the "type" in which a state might create a liberty interest. Id.

As to whether or not New York has in fact created a interest in being free from protective custody, we find that New York has not created the requisite entitlement. There is simply no New York law that entitles inmates to remain in the general prison population. On the contrary, New York Corrections Law clearly establishes that

> [t]he superintendent of a correctional facility may keep any inmate confined in a cell or room, apart from accommodations provided for inmates who are participating in programs of the facility, for such period as may be necessary for the maintenance of order or discipline.

N.Y. CORR. LAW § 137(6). Moreover, prison officials have the discretion to place inmates who are "potential victims" in IPC for

-12-

their own safety. See N.Y. COMP. CODE R. & REG., tit. 7, § 330.5. New York law therefore has not created an entitlement to be free from IPC to the extent it is necessary for the safety of the inmate and the "maintenance of order or discipline."

Accordingly, because neither the Due Process Clause nor New York State law creates a liberty interest in being free from protective custody, involuntarily, voluntarily or otherwise, O'Diah was not entitled to procedural due process before being so confined. Accord, White v. Artuz, . The Court notes that in the present case, although he was not entitled to a hearing, O'Diah did receive a one. He has not alleged any procedural deficiencies occurred during the hearing; he simply disagrees with the outcome of the hearing.

In sum, Paragraphs 39 through 41, 46 through 60, and 69 through 71 are dismissed with prejudice.

**F.     Paragraphs 36, 42-45, 61 & 68**

Plaintiff asserts that on February 23, 2009, and on March 8, 2010, he was "physically attacked without probable cause by [an] inmate at the undue influences of Mr. Weber; Correctional Officers Atkins, Neth, Konkle Andrews, Sr., Lunith, at the endorsement of . . . Superintendent David Unger." Compl., ¶¶ 43, 68. According to Plaintiff, he allegedly was denied access to the medical clinic Id. In the next paragraph, he alleges that Dr. DePerio exerted "undue influence" on CO Atkins to force him not to write up an incident report or bring Plaintiff to the medical clinic. Id., ¶ 44. In

-13-

addition, CO Atkins allegedly "knocked [him] down" in the snow when returning him to his residence and aggravated his "pre-existing medical condition." Id., ¶ 45.

### 1. Failure to Protect from Assault

In Farmer v. Brennan, 511 U.S. 825, 828 (1994), the Supreme Court addressed the conditions under which a prison official's failure to prevent an inmate-on-inmate assault violates the Constitution. The Eighth Amendment imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates," id. (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)), and in particular imposes "'a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. at 833 (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1977)).

A prisoner alleging a "failure to protect" claim must show that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the prison official showed "deliberate indifference" to the prisoner's safety." Farmer, 511 U.S. at 834. The plaintiff must plausibly allege that the defendant acted with "a sufficiently culpable state of mind[,]" id. at 834–35 (internal citations and quotations omitted), that is, the defendant knew of and disregarded "an excessive risk to inmate health or safety. . . ." Id. at 837.

Plaintiff has provided no details about the time or location of the attacks, how the incidents occurred, or any witnesses to the

incidents. Notably, the alleged assailants were not identified, indicating that CO Atkins could not have been on notice that Plaintiff required protection from any particular inmates. Plaintiff has not set forth plausible allegations regarding either element of a failure to protect claim.

### 2. Deliberate Medical Indifference

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976) (bracketed text in original)). The standard for determining whether there has been an Eighth Amendment violation based on deliberate indifference to a prisoner's serious medical needs

> incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison officials acted with a sufficiently culpable state of mind.

Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003) (citing Estelle, 429 U.S. at 104; Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).

Plaintiff's assertions against CO Atkins and Dr. DePerio completely fail to fulfill the minimum pleading standards for a deliberate indifference claim. There is nothing from which a factfinder could infer the requisite facts to show a sufficiently serious medical need or a criminally reckless state of mind.

-15-

### 3. Assault by CO Atkins

According to Plaintiff, CO Atkins "pushed and knocked [him] down" outside his dormitory "without rational basis." Compl., ¶ 43. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Notably, Plaintiff does not allege any resultant injury from the incident, which was "not sufficiently serious or harmful to reach constitutional dimensions." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (inmate's allegations of excessive force-that he was bumped, grabbed, elbowed and pushed by two corrections officers-did "not approach an Eighth Amendment claim") (citing Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)).

### G. Paragraphs 62-67

Plaintiff asserts that various corrections officers "dropped false slips" on him, accusing him of drug use. It is well-settled that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); see also Boddie, 105 F.3d at 862 ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."). "The inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's

exercise of his constitutional rights." Velez v. Burge, 483 F. App'x 626, 627 (2d Cir. 2012) (citing Boddie, 105 F.3d at 862; Freeman, 808 F.2d at 951). This Plaintiff has not done. Indeed, Plaintiff indicates that he had negative urinalysis results, so the matter did not proceed beyond the filing of the allegedly false misbehavior reports.

**H.   Paragraphs 72, 75-78**

Plaintiff asserts that when he was unconstitutionally placed into IPC, certain items of his personal property were lost during the move. In particular, he complains that he lost $500 worth of food from the commissary, as well as various documents–"private business feasability studies", design plans, and installation plans for a manufacturing plan allegedly worth over $50 million dollars.

Under Hudson v. Palmer, 468 U.S. at 536, even the intentional destruction of an inmate's property by a prison officer does not violate the Due Process Clause if the state provides that inmate with an adequate post-deprivation remedy. Id. O'Diah has not stated an actionable constitutional claim because New York state law provides him with an adequate post-deprivation remedy, i.e., § 9 of the Court of Claims Act. Reyes v. Koehler, 815 F. Supp. 109, 114 (S.D.N.Y. 1993) (citing Blum v. Koch, 716 F. Supp. 754, 762 (S.D.N.Y. 1989); other citations omitted).

**V.   Conclusion**

For the reasons discussed above, Defendants' motion to dismiss [#69] is granted, and the complaint [#64] is dismissed in its

entirety. The Court hereby certifies that any appeal from this Decision and Order would not be taken in good faith and therefore denies leave to appeal as a poor person. Any further requests for poor person status must be made, on motion, to the Second Circuit.

The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   December 9, 2013
         Rochester, New York